

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 10, 1952

Hon. J. W. Edgar　　　　　　Opinion No. V-1551
Commissioner of Education
Texas Education Agency　　　Re: Authority of State Commis-
Austin, Texas　　　　　　　　　sioner of Education to
　　　　　　　　　　　　　　　　allot Brackett Independent
　　　　　　　　　　　　　　　　School District professional
　　　　　　　　　　　　　　　　units under the sparse
　　　　　　　　　　　　　　　　district clause, Par. 4. of
Dear Sir:　　　　　　　　　　　Article 2922-13, V.C.S.

　　　　　We refer to your request for an opinion of this
office concerning the application of the sparse district
clause (Par. 4 of Sec. 1, Art. 2922-13, V.C.S.) to a
submitted fact situation. This clause appears in the
Gilmer-Aikin law, effective June 8, 1949. S.B. 116,
Acts 51st Leg., R.S. 1949, ch. 334, p. 625, Art. III,
Sec. 1. Your inquiry reads in substance as follows:

　　　　　The first and fourth paragraphs of Arti-
　　　cle 2922-13, V.C.S., read, in part, as
　　　follows:

　　　　　"Section 1. The number of professional
　　　units allotted for the purposes of this Act
　　　to each school district, except as otherwise
　　　provided herein, shall be based upon and
　　　determined by the average daily attendance
　　　for the district for the next preceding
　　　school year, separate for whites and separate
　　　for negroes. . . .

　　　　　"Provided further, that any school dis-
　　　trict containing one hundred (100) square
　　　miles or more and having fewer than one (1)
　　　pupil per square mile, and which is now
　　　equipped with school facilities to maintain,
　　　and is now operating and maintaining a four-
　　　year accredited high school, may be allotted
　　　by the State Commissioner of Education as
　　　many professional units as were provided
　　　during the school year 1948-1949; provided
　　　that the State Commissioner of Education shall

take into consideration the density and distribution of population in the district, road conditions, and the proximity of the school to another four-year accredited high school in making such allotments."

In 1949 (during the 1948-49 school year when Senate Bill 116, supra, became effective) the Brackett Independent School District, containing then more than 100 square miles of area, operated and maintained a four-year accredited high school. During the 1948-1949 school year this district was provided 18 white and 6 colored professional units under the general eligibility provisions of the then State Aid Law (Par. 1, Sec. 1 of Art. I, H.B. 295, Acts 50th. Leg., R.S., 1947, ch. 228, p. 401), and not by virtue of the sparse district exemption clause (Par. 3, Sec. 1 of Art. I, H.B. 295, supra).

The sparse clause in House Bill 295 read in part as follows:

". . . And be it further provided that Independent School Districts comprised of . . . (100) square miles or more, and that are now accredited and equipped to maintain a twelve (12) grade school with sixteen (16) or more affiliated high school units, and having a scholastic population of less than . . . (1) per square mile in the district may be exempt from the average daily attendance and teacher-pupil quota requirements of this Act. . ."

For the 1948-1949 year the scholastic population of Brackett independent district averaged more than one pupil per square mile.

In May 1951, the Spofford Common School District was annexed to the Brackett district. During the 1948-1949 year, the Spofford district was provided 3 white professional units under House Bill 295, supra. Thus the territory now constituting the area of the enlarged

Brackett district was provided 21 white and 6 colored professional units in the 1948-1949 school year.

The 1952 scholastic census discloses that the Brackett district, with an area of more than 100 square miles, now has fewer than (1) pupil per square mile. The district is equipped with school facilities to maintain and is now maintaining and operating a four-year accredited high school. On the basis of its average daily attendance the district will be entitled to 15 white and 4 colored professional units for the school year 1952-1953, under the general provisions of Par. 1 of Article 2922-13.

The Texas Central Education Agency contends that the sparse district clause, (Par. 4 of Art. 2922-13) applies only to those districts which were sparse in 1948-1949, and which met the other specifications of the Act. The Brackett district contends that it applies to their district which, though not sparse in 1948-1949, is now a sparse district within the meaning of that statute.

As originally submitted in the Legislature, Senate Bill 116, supra, contained no sparse-district exception provision. S.J. 51st Leg., R.S. 1949 p. 81; S.J. Supp. Jan. 25, 1949. Such a provision was adopted in the Senate as an amendment to Section 1 of Article III of that bill, adding thereto the following:

"   . . .

"Provided further that in any school district containing one hundred (100) square miles or more and having fewer than one (1) pupil per square mile, and which is now equipped with school facilities to maintain and is now operating and maintaining a four (4) year accredited high school, additional classroom teacher units over and above those listed below may be allowed by the Central Education Agency." (S.J. supra, p. 231).

Hon. J. W. Edgar, page 4 (V-1551)


Later amendments were offered in, but tabled by, both the Senate and House which read:

"Provided that every public school in Texas shall be guaranteed, as a minimum, at least the same number of teachers to which they were entitled for the 1948-49 school year under the provisions of S.B. 167 enacted by the 50th Legislature" (S.J. supra, p. 252; House Journal, 51st Leg., R.S. 1949, p. 1807).

The reference therein to "S.B. 167" was erroneous; it was House Bill 295 of the 50th Legislature which provided for teacher allotments for the 1948-49 school year.

Another amendment offered in, but tabled by, the Senate read:

"Any county-wide school district having fewer than one pupil per square mile and which is now operating an accredited four-year high school shall be permitted to employ as many teachers as were employed by said district during the school year 1948-49." (S.J., p. 254).

Senate Bill 116, as amended, eventually went to a Conference Committee of the Legislature. The conference report adopted by the Senate and the House (S. J. pp. 1290, 1302), contained the sparse district clause quoted herein as paragraph 4 of Article 2922-13.

This legislative history demonstrates that as originally framed the general provisions of Article III of Senate Bill 116, appertaining to district eligibility for professional units, were to apply generally to all school districts without exception. The cited rejected amendments reflect the effort made to preserve for school districts at least the minimum number of teachers allowed them in the 1948-1949 year under House Bill 295, supra. The cited adopted amendment was more limited in its scope, and as it emerged out of conference committee, the discretion of the allotment agency was further limited to allow only in its discretion, "as many professional units as were provided during the school year 1948-1949."

In short, the apparent purpose of paragraph 4 of Article 2922-13, was to allow those school districts coming within its exception more professional units than they might be entitled under the general provisions of the Act. It was to provide those districts then existing as sparse districts which met the sparse requirements of the Act, and which then had facilities for and were then operating and maintaining a four-year accredited high school, with a teaching or professional staff at least comparable in numbers, at the discretion of the Commissioner, to that enjoyed by the district in the 1948-1949 year under House Bill 295, supra.

Had the Legislature intended that the exception provided in paragraph 4 of Article 2922-13, should have application to districts which subsequent to the school year 1948-49 met the sparse requirements of that provision, it could and would have deleted the word "now" from its immediately following requirements, or prepared the phrase to read "now or hereafter" equipped with school facilities to maintain, and is now or hereafter operating and maintaining a four-year accredited high school." To give effect to the words "now" appearing in that exception clause, in the manner contended by the Brackett district, would be to construe such words as surplusage and without meaning, and to attribute to them a meaning at variance with the intended purpose for which they were inserted in the Act.

Therefore, we agree with the Texas Central Education Agency that the sparse district clause (Par. 4 of Article 2922-13) applies only to those school districts which met the sparse requirements in the school year 1948-1949, and which met also the other specifications of the Act. The Brackett district, under the facts submitted not having met the sparse requirements in the 1948-1949 school year, such sparse district clause could have no application thereto.

## SUMMARY

The legislative history concerning the enactment of paragraph 4 of Article 2922-13, V.C.S., reveals that same should have application only to such districts as were sparse districts in the school year 1948-1949. Under

the submitted facts, the Brackett Independent School District was not a sparse district in 1948-1949 year, therefore paragraph 4 of Article 2922-13, V.C.S., would have no application in the determination of its professional unit allowables.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

BW:am

By Burnell Waldrep
Assistant